**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PATRICK THELEN, # 16842-039,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-057-JPG** |
| | ) | |
| **KIMBERLY M. SCHNEIDER,** | ) | |
| **ELIZABETH MILLS,** | ) | |
| **UNKNOWN PARTY,** | ) | |
| **UNITED STATES of AMERICA,** | ) | |
| **and DOUGLAS A. KRUSE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is a federal inmate currently incarcerated at the FCI-Greenville, where he has been confined since 1998.  He brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority.  *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also includes a Federal Tort Claim.  Specifically, Plaintiff asserts that Defendants were negligent in providing him with medical care, and that they took unauthorized medical co-payments from him.  He also challenges the constitutionality of 18 U.S.C. § 4048 as applied to him.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that one of Plaintiff's claims pass threshold review; others are subject to dismissal under § 1915A.

**<u>The Complaint</u>**

The factual allegations underlying this action are virtually identical to those that gave rise to another pending action brought by Plaintiff in 2015, *Thelen v. Gregory, et. al.*, Case No. 15-

cv-1015-MJR-SCW (S.D. Ill.) (See Doc. 5 in that case).  In Case No. 15-1015, Plaintiff asserted that a number of Greenville officials (including the individual Defendants named herein) were deliberately indifferent to his serious medical needs regarding a persistent infection on his penis, and that certain defendants retaliated against him for filing grievances about his medical care.  In the present case, however, Plaintiff focuses on the multiple medical co-payments that Defendants charged him for his repeated visits to seek effective care and treatment for what he describes as a chronic condition.  Additionally, he raises a negligence claim against the United States for the inadequate medical care he received from the Greenville medical providers.

The individual Defendants herein are a doctor (Defendant Kruse) and two physician's assistants (Defendants Schneider and Mills) (Doc. 1, p. 2).  He also includes an Unknown Party (John/Jane Doe) Defendant, who "facilitated the taking" of medical co-payments from his inmate trust fund account (Doc. 1, p. 3).

Beginning in October 2014, Plaintiff sought medical attention from Defendant Schneider for a red crusty spot on the end of his penis.  After examining him, Defendant Schneider "took a wait and see approach."  *Id.*  By December 8, 2014, the infection worsened; Defendant Mills saw Plaintiff and prescribed an antibiotic.  This, however, failed to improve Plaintiff's symptoms.  Thereafter, Plaintiff made multiple visits to Defendants Schneider and Mills for the same problem (Doc. 1, pp. 4-5).  He received some medication (Nystatin cream) that was ineffective, and Defendants refused to approve tests to diagnose the cause of his infection.

On April 2, 2015, Plaintiff saw a doctor (Dr. Harvey, who is not a named Defendant) for the first time, and was diagnosed with a fungal infection.  A different anti-fungal cream medication (Clotrimazole) was prescribed.  Plaintiff saw Defendant Kruse on April 13, 2015. Defendant Kruse ordered anti-fungal pills (Ketoconazole) and blood tests, but refused to do a test

to identify the specific fungus.  Two days later (April 15), Plaintiff was placed in the special housing unit, where his anti-fungal cream was taken away.  On April 20, 2015, the infection was visibly worse.  Defendant Kruse saw Plaintiff on that day and prescribed an antibiotic.  However, he refused a dermatologist referral and further testing (Doc. 1, p. 6).

During May 2015, Plaintiff's infection did not improve, and he received no treatment at all for approximately three weeks.  Defendants Kruse and Mills again refused to order fungal testing.  A dermatologist referral was requested, but was delayed (Doc. 1, p. 7).  On May 27, 2015, the dermatologist prescribed the same anti-fungal cream that had not worked in the past (Clotrimazole), as well as a steroid cream, but Plaintiff did not receive these medications until June 4.  The infection got worse.

On June 18, Defendant Schneider saw Plaintiff again, and opined that his infection was not fungal after all.  On June 26, Defendant Mills prescribed him Fluconazole pills (Doc. 1, p. 10).  Defendant Kruse saw him again on July 6, continued the ineffective Clotrimazole, and refused to order testing or a dermatologist referral.  Plaintiff saw Defendant Schneider again later in July; this time she advised him that she thought he had psoriasis, and he would "just have to live with it" (Doc. 1, p. 11). In an August 13, 2015, visit to Defendant Schneider, she told him she believed the condition was Lichen Planus, which he would just have to live with (Doc. 1, p. 13).  Soon after this, Defendant Mills prescribed Ketoconazole pills, but Plaintiff was not able to obtain the requested dosage.

In August 2015, Defendant Schneider performed a bacterial culture, which showed that Plaintiff had a staph infection (Doc. 1, p. 14).  She ordered antibiotics for him, and told him that the staph infection was secondary to the original/primary infection.

On November 24, 2015, Plaintiff finally saw an outside dermatologist, who ordered

testing.  This turned out to be positive for a fungal infection.  The specialist ordered Lamisil, but Plaintiff did not receive these pills until eight days after they were prescribed (Doc. 1, p. 16).

About a month later, on December 28, 2015, Plaintiff consulted Defendant Schneider and Dr. Harvey because the infection was getting worse even with the Lamisil.  However, Dr. Harvey and Defendant Schneider did not think that the infection had worsened, and refused to approve testing for the fungus (Doc. 1, p. 17).

On January 6, 2016, Plaintiff saw Defendant Mills, who told him she would consult Dr. Schmidt for a follow-up appointment and possible other medication.  Plaintiff submitted the instant lawsuit on January 14, 2016 (Doc. 1, p. 26).

In support of his claims of negligence, Plaintiff states that the Defendants and other medical personnel at Greenville allowed his staph infection to go undiagnosed for at least eight months, because they delayed and refused to perform tests.  As a result, he has permanent scarring and nerve damage to his penis.[1]  The Greenville providers also failed to properly monitor Plaintiff's blood and liver functions while he was on certain medication.

Further, Plaintiff asserts that staph and fungal diseases are "chronic infectious diseases" within the meaning of 18 U.S.C. § 4048(b)(2), 28 C.F.R. § 549.72(f) and BOP Program Statement 6031.02, which all prohibit the assessment of co-payment charges for diagnosis and treatment of such chronic diseases (Doc. 1, p. 18).  Defendants Mills, Kruse, and Schneider repeatedly charged Plaintiff co-payments for his medical visits related to his chronic staph and fungal infections, when such co-payments were not authorized by the above provisions (Doc. 1, pp. 18-19).  Defendant John/Jane Doe facilitated the taking of Plaintiff's money "under the cover

---

[1] Plaintiff also includes allegations that Dr. Hardin violated Illinois law by engaging in "telemedicine" without being properly licensed, and that Defendant Kruse "aided and abetted" this unlawful practice (Doc. 1, p. 17).  These allegations shall not be considered as part of this action, because Plaintiff's claim for "illegal telemedicine" was dismissed with prejudice from Case No. 15-1015 (See Doc. 5 in that case).

of federal law and the inmate co-pay act" (Doc. 1, p. 3).

Plaintiff organizes his claims into eight counts, and adds two constitutional challenges to 18 U.S.C. § 4048 (Doc. 1, pp. 20-25).  He seeks compensatory, punitive, and nominal damages (Doc. 1, p. 26).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:**  Negligence and medical malpractice claims against Defendant United States of America under the Federal Tort Claims Act, for the actions of its employees who allowed Plaintiff's infections to persist for months without adequate, timely, or effective testing or treatment;[2]

> **Count 2:**  Claims against Defendants Schneider, Mills, Kruse, and John/Jane Doe for unlawfully taking Plaintiff's money for medical co-payments for treatment of his chronic illnesses, in violation of the Fifth Amendment, 18 U.S.C. § 4048(b)(2), 28 C.F.R. § 549.72(f), and the inmate trust fund law;[3]

> **Count 3:**  Defendant Schneider charged Plaintiff co-pays in order to retaliate against him for seeking medical treatment.[4]

Count 1 shall be dismissed from the action without prejudice, but may be reinstated if Plaintiff timely files the required affidavit and certificate(s) of merit pursuant to Illinois law. Count 2 shall proceed for further review in this action.  Count 3 shall be dismissed without prejudice.

---

[2] Count 1 encompasses the claims designated by Plaintiff in his complaint as Counts V, VI, VII, and VIII (Doc. 1, pp. 21-24).
[3] Count 2 includes Plaintiff's claims labeled as Counts I, II, and III (Doc. 1, p. 20), and both constitutional challenges (Doc. 1, p. 25).
[4] Count 3 corresponds with the claim designated by Plaintiff as Count IV (Doc. 1, pp. 20-21).

**Count 1 – Federal Tort Claims**

Plaintiff properly identifies the United States of America as the Defendant with reference to his claims of medical negligence brought pursuant to the Federal Tort Claims Act ("FTCA"). He also includes claims against Defendants Kruse and Schneider for medical malpractice (Doc. 1, pp. 23-24).  However, the United States is the only proper Defendant in an FTCA claim. *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994).  Therefore, Defendants Kruse and Schneider are dismissed from Count 1.

Cases brought under the FTCA are governed by the substantive law of the place where the alleged acts or omissions constituting negligence occurred.  *See* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 10 (1962); *Bowen v. United States*, 570 F.2d 1311, 1315-16 (7th Cir. 1978).  Therefore, Illinois law applies to this medical negligence/malpractice claim.

Where a plaintiff sues the United States for the medical negligence or malpractice of its employees in Illinois, the applicable Illinois statute requires the plaintiff to file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records).  *See* 735 Ill. Comp. Stat.

§5/2-622(a) (West 2013).[5]   This is a substantive requirement of Illinois law.  *See Hahn v. Walsh*, 762 F.3d 617, 629-33 (7th Cir. 2014) (diversity jurisdiction context), *cert. denied,* 135 S. Ct. 1419 (2015); *Murphy v. United States*, Case No. 08-cv-745-JPG-DGW, 2010 WL 3310258 (S.D. Ill. Aug. 19, 2010) (FTCA context).   Failure to file the required certificate is grounds for dismissal of the claim.  *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).   However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court.  *Sherrod*, 223 F.3d at 614.

In this case, Plaintiff has not filed the required affidavit and report(s).   Therefore, the Court must dismiss the FTCA claim in **Count 1** against the United States.   However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit/certificates.       Should  Plaintiff  fail  to  timely  file  the  required affidavit/certificates, the dismissal of **Count 1** shall become a dismissal **with prejudice.**  *See* FED. R. CIV. P. 41(b).

**Count 2 – Medical Co-payments**

Plaintiff's Fifth Amendment claim over the "unlawful" co-pay charges raises a question of whether Defendants deprived him of his property (the co-pay funds) without due process of law.   The Supreme Court has held that deprivation of an inmate's property does not violate the due process clause *if* the government provides an adequate remedy.  *Hudson v. Palmer*, 468 U.S. 517, 536 (1984).

---

[5] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010.   *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety).   After *Lebron*, the previous version of the statute continued in effect.  *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).   The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section.  *See* notes on validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

An inmate's constitutional rights are not violated by the collection of a fee for prison medical services. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Other courts which have addressed due process challenges to prison medical co-payments have likewise concluded that the assessment of such fees does not violate the Constitution. Under 18 U.S.C. § 4048, federal prisoners have access to a post-deprivation administrative grievance process where they may contest the co-payment fees. Such a system of post-deprivation review satisfies the due process requirement for an "adequate remedy." *See, e.g.*, *Baker v. Gonzalez*, No. 06-CV-91-HRW, 2007 WL 141050, at *1-4 (E.D. Ky. Jan. 17, 2007) (collecting cases, and concluding that the Bureau of Prison's ("BOP") notice of implementation of the co-payment system, and administrative procedure for challenging particular fees, provides adequate procedural due process), *rev'd on other grounds and remanded sub nom. Baker v. Mukasey*, 287 F. App'x 422 (6th Cir. 2008).

In addition to the constitutional requirement for due process, the Federal Prisoner Health Care Copayment Act (18 U.S.C. § 4048) provides that a prisoner who is assessed a medical co-payment "shall be given a reasonable opportunity to dispute the amount of the fee or whether the prisoner qualifies under an exclusion" under the Act. 18 U.S.C. § 4048(e). Plaintiff asserts that the exclusion for "diagnosis or treatment of chronic infectious diseases" should apply to him, and he did in fact invoke the prison's administrative remedy process to protest the co-payments that Defendants charged him for his medical care (Doc. 1-1, pp. 4-9, 12-14). However, his appeals of the co-payments were denied.

The BOP Director is given the discretion, in § 4048(b)(2), to determine whether any of the enumerated exclusions (which would exempt an inmate from the co-payment) are applicable

in a particular case.  Neither the statute nor the implementing provisions at 28 C.F.R. § 549.72(f) explains what illnesses qualify as a "chronic infectious disease."  Conditions such as Hepatitis-C or AIDS would most likely fall under this classification.  However, it is less clear whether Plaintiff's staph and fungal infections would come within this exempted category, even though he suffered from them for a lengthy period of time.  At this early stage of the case, the Court cannot determine whether the rejection of Plaintiff's claim that his condition exempted him from the co-payment fee as a "chronic infectious disease" amounted to an abuse of discretion. Accordingly, the due process claim in **Count 2** is not subject to dismissal under § 1915A.

The portion of Plaintiff's claim based on the Inmate Trust Fund law, however, does not survive threshold review.  Under 18 U.S.C. § 4048(e), the prisoner's consent is not required before a medical co-payment is collected from his trust fund account.  The Inmate Trust Fund law challenge shall not be considered further in this action.

Finally, Plaintiff's challenge to § 4048 as a "retroactive penal statute" is unavailing.  The statute is not punitive, and does not impose any punishment on federal inmates.  The assessment of a nominal charge for medical services is merely a method of recouping a small part of the cost of providing medical care to prisoners, for which they would likely be charged a much greater fee in the outside world.  The fees charged to any given prisoner have nothing to do with the offense for which he was convicted, but instead result when the prisoner seeks medical treatment.  This part of Plaintiff's claim shall not be considered further.

To summarize, the due process claim in **Count 2** shall proceed against Defendants Schneider, Mills, Kruse, and John/Jane Doe.  Before the unknown (John/Jane Doe) Defendant can be served, however, Plaintiff must identify the individual(s) by name.

**Count 3 – Retaliation**

Finally, Plaintiff claims that Defendant Schneider charged him medical co-payments in order to retaliate against him for seeking medical treatment for his infections (Doc. 1, p. 21).

Defendant Schneider's imposition of co-payments on Plaintiff, in and of itself, does not give rise to a claim for unconstitutional retaliation. The complaint would state a colorable *Bivens* claim only if the facts suggest that these routine actions were taken in retaliation for the exercise of a constitutionally protected right. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 [or *Bivens*] even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

Here, Plaintiff offers nothing more than his bald assertion of Defendant Schneider's retaliatory motive in support of this claim. None of the facts related in the complaint indicate that Defendant Schneider assessed the co-payments in order to retaliate against Plaintiff. To the contrary, Plaintiff says that the co-payments were charged each time he requested treatment for his symptoms, which is in accordance with the ordinary procedures that apply to all inmates. Plaintiff's conclusory claim of retaliation, in the absence of any factual context suggesting an improper motive, is not enough to plead a claim for unconstitutional retaliation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("conclusory legal statements" are not adequate to state a claim).

For these reasons, the retaliation claim in **Count 3** against Defendant Schneider shall be dismissed without prejudice.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendant.

**Disposition**

**COUNTS 1 and 3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **UNITED STATES of AMERICA** is **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that as to the FTCA claim for medical negligence/malpractice in **COUNT 1**, Plaintiff shall file the required affidavit pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of this order (on or before April 19, 2016). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavit or reports, the dismissal of **COUNT 1** shall become a dismissal **with prejudice**.

As to the remaining claim in **COUNT 2**, The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **SCHNEIDER, MILLS,** and **KRUSE**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **SCHNEIDER, MILLS,** and **KRUSE** pursuant

to Rule 4(e) of the Federal Rules of Civil Procedure.[6]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Service shall not be made on the Unknown (John/Jane Doe) Defendant(s) until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel.  Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

---

[6] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 14, 2016**

*s/J.Phil Gilbert*
United States District Judge